1

2

3

4            UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
5                   AT TACOMA

6   BRENT LUYSTER,

7                          Plaintiff,          Case No. C18-6022 BHS-TLF

8          v.                                  REPORT AND
                                               RECOMMENDATION
9   RIC BISHOP, et al.,
                                               Noted for March 20, 2020
10                         Defendants.

11          Plaintiff, proceeding *pro se* and *in forma pauperis*, brings this action under 42

12   U.S.C. § 1983 alleging that when he was a pretrial detainee at the Clark County Jail, the

13   conditions of his confinement violated his constitutionally protected rights. Dkt. 1, 5.

14   This matter is before the Court on defendants' motion for judgment on the pleadings

15   pursuant to Federal Rule of Civil Procedure (FRCP) 12(c). Dkt. 17. For the reasons set

16   forth below, the undersigned recommends the Court **GRANT IN PART** and **DENY IN**

17   **PART** defendants' motion in accordance with this Report and Recommendation.

18                    FACTUAL AND PROCEDURAL HISTORY

19          The following facts are alleged in the complaint and are assumed to be true only

20   for the purpose of reviewing this motion. *Cedar Point Nursery v. Shiroma*, 923 F.3d 524,

21   530 (9th Cir. 2019).

22          A.  Routine Strip Searches

23          On February 12, 2017, while plaintiff was a pretrial detainee, he allegedly

24   breached security measures in place at Clark County Jail. Dkt. 5 at ¶ 8. In response, the

25

Clark County Sheriff's Office instituted additional security measures and conducted an x-ray and cavity search of plaintiff for contraband. Dkt. 5 at ¶ 9-10. These searches did not find any contraband. *Id.* Clark County Jail then placed plaintiff in a strip cell where video monitoring and security checks were conducted every 15 minutes. *Id.* at ¶ 11.

Defendant Tangen issued a security plan for plaintiff, authorizing the use of routine strip searches that were conducted by and under the direct orders of defendants Gentry, Austin, Ashworth, Anderson, Plotner, Schaub, and Wolfe. *Id.* at ¶¶ 13, 14. From February 13 to March 1, 2017, defendants strip searched plaintiff approximately 36 times and prevented him from filing a grievance regarding the frequent strip searches. *Id.* at ¶ 15-16. Plaintiff filed a grievance; this was initially denied by defendant Austin, and denied on appeal by defendant Barnett. *Id.* at ¶ 17-19.

The strip searches continued on a regular basis and by March 19, 2017 defendants had searched plaintiff at least 75 times. *Id.* at ¶ 21. On March 24, 2017 Defendant Bishop upheld plaintiff's grievance informing plaintiff that while the strip searches were appropriate, they should be curtailed and only conducted as facility security required. *Id.* at ¶ 22. Defendants gradually reduced the amount of strip searches conducted, but the searches continued until plaintiff left the Clark County Jail in December of 2017. *Id.* at ¶ 24.

The defendants used the following procedures when conducting the strip searches. One of the defendants would enter plaintiff's cell accompanied by a group of correctional deputies, handcuff plaintiff's hands behind his back and order him to kneel at the center of the cell. *Id.* at ¶¶ 26-27. The correctional officers would then grab plaintiff by the arms and hold him in a chokehold while other officers shackled plaintiff's

legs together. Dkt. 5 at ¶ 28. The officers would then force plaintiff to walk to the dressing room where he was forcefully stripped of his clothes while still handcuffed and shackled. *Id.* at ¶¶ 29-30.  One of the officers would then use a metal detecting wand to scan plaintiff's genitals and rectum before scanning plaintiff's face, sometimes touching both with the wand in the process. *Id.* at ¶ 31. The officers would then force plaintiff to squat over a mirror and cough several times. *Id.* at ¶¶ 32-35.

Plaintiff observed that defendants conducted about half of these strip searches between 11:30 p.m. and 4:30 a.m. and often within 45 minutes of plaintiff having fallen asleep. *Id.* at ¶¶ 36-37. The defendants would awaken plaintiff for these night searches by banging on the cell door, flashing lights into the cell and screaming commands for plaintiff to stand for a search. *Id.* at ¶ 38. The officers would enter the cell with tasers aimed at plaintiff. *Id.* at ¶ 39. Plaintiff reports that he was unable to sleep in anticipation of a night time search and was unable to sleep after the nighttime searches. *Id.* at ¶ 40.

B.  Step Program

In addition to the routine strip searches, defendant Gentry prepared an Administration Segregation Step Program ("Step Program") for plaintiff. *Id.* at ¶ 45. As part of the Step Program, plaintiff was denied visitation from friends and family and was only permitted out of his cell for one hour every three days. *Id.* at ¶¶ 49-50. During his one hour out of his cell, plaintiff was confined to a room containing only a telephone and a shower. *Id.* at ¶ 51. Plaintiff was not allowed out of this room and was not provided any exercise or recreational equipment. *Id.* at ¶¶ 50-52.

When the Step Program was first implemented, plaintiff was denied access to his legal documents. *Id.* at ¶ 54. From February 12 to April 24, 2017 plaintiff was denied

access to any of his legal documents. Dkt. 5 at ¶ 54. On May 17, 2017, Clark County

Superior Court issued an order directing the jail to allow plaintiff access to the police

reports in his cell. *Id.* at ¶ 56. Plaintiff had access to the police reports from May 17,

2017 to May 22, 2017. *Id.* at ¶ 57. On May 22, 2017, defendant Austin confiscated

plaintiff's documents for allegedly breaking a jail rule. *Id.* at ¶ 58. Defendant Bishop

denied plaintiff's grievance requesting the return of his legal documents. *Id.* at ¶¶ 59, 60.

Plaintiff was only allowed access to his legal documents during his one hour out every

three days, which plaintiff claims had an adverse effect on his ability to assist in the

defense of his criminal case. *Id.* at ¶ 65.

The Step Program prohibited plaintiff from possessing personal clothing,

newspapers, magazines, photos, letters, writing materials and books. *Id.* at ¶¶ 66-72.

Plaintiff was only permitted to read letters and use writing materials during his one hour

out. *Id.* at 69-70. The only bedding plaintiff was allowed was a bare mattress and a

second suicide smock to use as a blanket. *Id.* at ¶¶ 81-82. At times the temperature in

the cell would drop below 67 degrees Fahrenheit causing plaintiff's hands and feet to

ache and his fingernails would turn a bluish-purple color. *Id.* at ¶¶ 83, 84.

Plaintiff was also denied personal hygiene items. *Id.* at ¶¶ 73-78. Plaintiff was

permitted only 3-5 squares of toilet paper per day and was only permitted access to

soap and a towel during his one hour out every three days. *Id.* at ¶¶ 73-74. Plaintiff was

not permitted to wash his hands after using the toilet or before meals. *Id.* at ¶ 74.

Additionally, plaintiff was not given a toothbrush in his cell and was often forced to go

days and sometimes weeks without brushing his teeth. *Id.* at ¶ 75.

Eventually, plaintiff developed large painful abscesses along his lower jaw which required medical treatment and the use of antibiotics. Dkt. 5 at 76. The antibiotics caused a severe allergic reaction requiring medical attention. *Id.* at ¶ 77.

Whenever plaintiff left his cell he was required to wear leg shackles. *Id.* at ¶ 85. Defendants Gentry, Austin, Ashworth, Schaub, Plotner, Anderson and Wolfe either carried out or supervised the shackling of plaintiff. *Id.* at ¶ 92. Plaintiff was not allowed any socks or pants while wearing the shackles and they were instead applied to his bare skin. *Id.* at ¶ 86. This caused cuts along plaintiff's ankles and legs that did not heal due to the frequent use of leg shackles. *Id.* at ¶¶ 87-88.

Each time plaintiff was placed in leg shackles the shackles would tear existing scars and create new cuts. *Id.* at ¶¶ 89-90. A few times (after a strip search), plaintiff would ask a nurse to bandage his wounds, yet defendants would remove the bandages before returning plaintiff to his cell. *Id.* at ¶ 93. Plaintiff states that defendants Gentry and Austin would taunt plaintiff when he complained of the pain caused by the shackles. *Id.* at ¶ 94. The use of shackles, caused large discolored and raised scars on plaintiff's legs and ankles. *Id.* at ¶ 96.

Plaintiff reports that defendant Gentry informed plaintiff that the Step Program and the routine strip searches were punishment and retaliation for the alleged breach of security measures. *Id.* at ¶¶ 25, 45, 47, 130. According to plaintiff, defendant Gentry informed plaintiff that the alleged security breach "was on the front page of the news paper, and that it caused a great deal of embarrassment and problems for the jail administration." *Id.* at ¶ 46. Plaintiff states that defendant Gentry told him the Step Program was "pay back" for the problems that plaintiff was causing. *Id.* at ¶ 47.

C. Mental Health Issues

As a result of the frequent strip searches, the Step Program and other conditions of confinement, plaintiff began to develop serious mental health issues. Dkt. 5 at ¶ 97. Clark County Jail denied plaintiff's request to see the medical staff regarding his mental health concerns. *Id.* at ¶ 99. On March 14, 2017 plaintiff began suffering hallucinations in his cell. *Id.* at ¶ 100. Plaintiff hallucinated that there was a hornet's nest in the smoke detector and he began to cover the smoke detectors, the walls and security cameras in his cell with his own feces. *Id.* at ¶¶ 100-101. As punishment for smearing feces in the cell, defendant Gentry ordered that plaintiff be kept in the dirty cell without access to hygiene supplies, a second smock, or his break -- of one hour out, every three days. *Id.* at ¶ 102.

During this period, although plaintiff continued requesting mental health care, Clark County Jail did not provide plaintiff any mental health treatment. *Id.* at ¶ 103. Plaintiff continued to suffer hallucinations and smear feces in his cell. *Id.* at ¶ 104. Defendant Gentry responded by confining plaintiff to his cell for 10 consecutive days with only his mattress and suicide smock. *Id.* at ¶ 105. During these 10 days, plaintiff was placed on a nutraloaf diet, was denied a meal tray or eating utensils and was forced to accept his meals with his soiled hands. *Id.* at ¶ 107.

Plaintiff continued to complain to staff regarding his mental health concerns. On April 16, 2017, a nurse met with plaintiff and raised the issues plaintiff was facing to defendant Plotner. *Id.* at ¶ 111. Defendant Plotner refused to take any action. *Id.* Plaintiff asked defendant Dougher for mental health treatment and cleaning supplies; Dougher laughed at plaintiff and denied the request. *Id.* at ¶ 112. In September of 2017

the Clark County Jail psychologist prescribed plaintiff coloring materials, mazes, puzzles, cross words and word search puzzles. Dkt. 5 at ¶ 114. Clark County Jail initially denied plaintiff access to these materials until defendant Gentry issued a memo making these items a part of the Step Program. *Id.* at ¶ 115.

### D. Nutraloaf

During his time at Clark County Jail, plaintiff was placed on a nutraloaf diet. *Id.* at ¶¶ 107, 116-123. Plaintiff claims that nutraloaf is "a small, densely packed brick of ground up food stuff," and "is only about ¼ the portion size of a standard jail meal." *Id.* at ¶ 116. Plaintiff states that the portions of nutraloaf that he was provided were so small that he suffered constant hunger pains. *Id.* at ¶ 118. The prolonged use of the nutraloaf diet caused plaintiff to develop serious GI tract problems. *Id.* at ¶ 119. The use of the diet caused constipation and plaintiff suffered from abdominal pain and bloody stool for months. *Id.* at ¶¶ 119-120. Plaintiff had to seek medical attention as a result of the ill-effects caused by the nutraloaf. *Id.* at ¶ 121-122. Plaintiff alleges that defendant Gentry knew that the nutraloaf was causing plaintiff to develop medical issues but continued to use the diet as a punishment. *Id.* at ¶ 123.

### DISCUSSION

Defendants move for judgment on the pleadings pursuant to FRCP 12(c). Dkt. 17. Defendants argue that: A) plaintiff lacks standing to seek injunctive relief, B) plaintiff fails to state a claim upon which relief may be granted, C) plaintiff's fails to allege the personal participation of each defendant, D) defendants are entitled to qualified immunity, and E) plaintiff's state law tort claims should be dismissed. *Id.*

Pursuant to Rule 12(c), "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." When reviewing a motion

based on Rule 12(c), the Court must accept the facts as pled by the nonmovant. *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1053 (9th Cir. 2011). "Rule 12(c) is functionally identical to Rule 12(b)(6) and […] the same standard of review applies to motions brought under either rule." *Id.* at 1055 n. 4 (citations omitted).

When reviewing a Rule 12(b)(6) motion, the Court must accept as true "all well-pleaded allegations of fact in the complaint and construe them in the light most favorable to the non-moving party." *Cedar Point Nursery v. Shiroma*, 923 F.3d 524, 530 (9th Cir. 2019)(internal quotations omitted). The court is not required to accept legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court may only consider the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice. *Cedar Point Nursery*, 923 F.3d at 530.

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft,* 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A claim is plausible on its face if the pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft*, 556 U.S. at 678. A pro se complaint must be liberally construed. *Mangiaracina v. Penzone,* 849 F.3d 1191, 1195 (9th Cir. 2017). However, this lenient standard does not excuse a pro se litigant from meeting the most basic pleading requirements. *See, American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107-08 (9th Cir. 2000).

The Civil Rights Act, 42 U.S.C. § 1983, allows a civil cause of action, seeking remedy for a "deprivation of federally protected rights caused by person acting under

1   color of state law." *Paratt v. Taylor*, 451 U.S. 527, 535 (1981) *overruled in part on other*

2   *grounds by Daniels v. Williams*, 474 U.S. 327 (1986). To state a claim under Section

3   1983, a complaint must allege: (1) the conduct complained of was committed by a

4   person acting under color of state law, and (2) the conduct deprived a person of a right,

5   privilege, or immunity secured by the Constitution or laws of the United States. *Id.*

6   Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these

7   elements are presented. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

8       Here, plaintiff is suing each defendant in their individual and official capacities.

9   Dkt. 5 at ¶¶ 3-6. "Local officials may be liable in their official capacities under § 1983

10  where their 'actions pursuant to official municipal policy of some nature caused a

11  constitutional tort.'" *Butler v. Elle*, 281 F.3d 1014, 1026 n. 4 (9th Cir. 2002) (quoting

12  *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691 (1978)).[1] When a plaintiff brings

13  an official capacity suit, the real party in interest is the governmental entity, not the

14  named official. *Butler*, 281 F.3d at 1026 n.4.

15      There are three scenarios under which a municipality, such as a County, may be

16  liable under Section 1983 (see Ninth Circuit Pattern Jury Instructions No. 9.5, 9.6, 9.7,

17  9.8) – first, if implementation of official policies, practices, or established customs (either

18  formal or expressly adopted official policy –a longstanding practice or custom that is

19  "standard operating procedure") causes a constitutional injury; second, if there are acts

20  or omissions such as failure to train employees and this policy, practice, custom, act or

21  omission was done with deliberate indifference to the constitutional right of persons who

---

[1] The undersigned notes that while state officials are not "persons" subject to suit for damages under Section 1983, local government officials are "persons" under Section 1983 and may be sued for damages. *Monell*, 436 U.S. at 690 n. 55 ("local government officials sued in their official capacities are persons' [subject to suit] under § 1983 in those cases … which a local government would be suable in its own name"); *Butler*, 281 F.3d at 1026 n. 9.

may be affected and causes a constitutional injury; or third, if the individual whose acts

or omissions amount to a constitutional violation was an official who had final authority

to make policy – or if such official ratified a subordinate's unconstitutional decision and

the basis for it, and this causes constitutional injury. *Connick v. Thompson,* 563 U.S. 51,

60-61 (2011); *Castro v. County of Los Angeles,* 833 F.3d 1060, 1074 (9th Cir. 2016).

Additionally, a first-time decision to adopt a particular policy or course of action, may

create official liability when the decision is made by a governmentally authorized

decisionmaker. *Larez v. Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).

Plaintiff also alleges that he is suing the defendants in their individual capacities.

Dkt. 5 at ¶¶ 3-6. To state a claim under Section 1983 against the defendants in their

individual capacities, plaintiff must allege facts showing how the defendant caused or

personally participated in causing the harm alleged. *Leer v. Murphy*, 844 F.2d 628, 633

(9th Cir. 1988). Vague and conclusory allegations of officials participating in a civil rights

violation are not sufficient to support a claim under Section 1983. *Ivey v. Board of

Regents*, 673 F.2d 266, 269 (9th Cir. 1982).

A person deprives another "of a constitutional right, within the meaning of Section

1983, if he does an affirmative act, participates in another's affirmative acts, or omits to

perform an act which he is legally required to do that *causes* the deprivation of which

[the plaintiff complains]." *Leer*, 844 F.2d at 633 (9th Cir. 1988) (emphasis in the original)

(citation omitted). Supervising officials are only liable in their individual capacities if they

set in motion a series of acts or knowingly refuse to terminate a series of acts by others,

which the supervising official knows or should know would cause constitutional injury.

*Larez*, 946 F.2d at 646.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

A)  <u>Motion to Strike</u>

On February 26, 2019, defendants filed an answer to plaintiff's complaint, which included, at the end, a one-line request for dismissal of action. Dkt 12. On March 15, 2019, plaintiff filed a document entitled "opposition" to defendants' answer in which he objected to dismissal of the action. Dkt. 16. On March 18, 2019, defendants filed this motion pursuant to Rule 12(c) which was noted for April 12, 2019. Dkt. 17. On April 25, 2019, plaintiff filed a response in opposition to defendant's motion, along with a letter explaining why the response was untimely filed. Dkt. 18.

Plaintiff explained that he was confused by defendant's motion, since defendant requested dismissal in their answer, and he was unsure if he should file a response to the motion. Dkt. 18. Plaintiff informed the Court that he contacted an attorney to arrange for representation, although it appears that plaintiff did not obtain representation, plaintiff indicates that it was suggested he file a response to the motion. *Id.*

The Court construed the plaintiff's letter as a request for extension of time to respond to the motion. Dkt. 19. The Court granted plaintiff's request for an extension of time and informed the parties that the Court would consider both the previously filed "opposition" (Dkt. 16) and plaintiff's response to defendant's motion (Dkt 18, Dkt. 19). To prevent any prejudice to defendants, the Court granted an extension of time to allow defendants to reply to plaintiff's response and "opposition." Dkt. 19.

In their reply, defendants ask the Court to strike plaintiff's response to defendant's motion, because plaintiff did not serve defendants with the response and did not file a certificate of service. Dkt. 20. The Court notes that defendants address

REPORT AND RECOMMENDATION - 11

plaintiff's response in their reply. Accordingly, even if plaintiff failed to properly serve the response, it appears that defendants have in fact received plaintiff's response.

Although plaintiff's pro se pleadings are to be liberally construed, plaintiff is still bound by the rules of procedure. *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995). However, courts have a "duty to ensure that pro se litigants do not lose their right to a hearing on the merit of their claim due to ignorance of technical procedural requirements." *Chess v. Dovey*, 790 F.3d 961, 971 (9th Cir. 2015) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

Here, because it appears that defendants received plaintiff's response to their motion and had an opportunity to respond, defendants are not prejudiced by plaintiff's purported failure to serve the response. Accordingly, the undersigned recommends the Court **DENY** defendants' motion to strike plaintiff's response (Dkt. 18).

B) Standing to Seek Injunctive Relief

To maintain a claim for injunctive relief a party must show they face an imminent threat of future injury. *See, Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 210-211 (1995). This alleged future injury must be "(a) concrete and particularized, and (b) actual, or imminent, not conjectural or hypothetical." *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The fact of past injury, 'while presumably affording [the plaintiff] standing to claim damages …, does nothing to establish a real and immediate threat that he would again' suffer similar injury in the future." *Adarand*, 515 U.S. at 210-211 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).

Here plaintiff is seeking, in part, injunctive relief that "upon plaintiff's return" Clark County Jail will cease use of the Step Program, routine strip searches and leg shackles.

Dkt. 5. Plaintiff alleges that he left the custody of Clark County Jail on December 15, 2017. Dkt. 5 at ¶¶ 24, 95. Plaintiff does not allege that he has been transferred back to Clark County Jail at any time since December 15, 2017. Additionally, the complaint does not allege any facts showing an expectation or probability of being transferred back to Clark County Jail.

Plaintiff argues, in his opposition to the defendants' motion, that the Superior Court of Washington improperly imposed a legal financial obligation on the plaintiff. Dkt. 18 at 3. Plaintiff argues that plaintiff challenged his conviction and that on appeal, the prosecuting attorney for Clark County asked the Court to remand for the purpose of striking the legal financial obligation imposed. *Id.* Plaintiff argues that if the case is remanded he will be returned to Clark County Jail and be subjected to the same conditions alleged in the complaint. *Id.* at 3-4.

First, the undersigned notes that the Court's review is limited to the complaint, materials incorporated into the complaint by reference, and matters of which the Court may take judicial notice. *Cedar Point Nursery*, 923 F.3d at 530. Here, nothing in the complaint indicates a reasonable expectation or demonstrated probability that plaintiff will be sent back to Clark County Jail. Additionally, even if plaintiff's sentence was remanded for the purposes of striking an erroneously imposed financial obligation, there is nothing in the record that demonstrates a reasonable expectation that he will be transferred back to Clark County Jail pending this alleged remand. Accordingly, plaintiff lacks standing to request injunctive relief because any threat of returning to Clark County Jail is speculative.

Therefore, plaintiff's claims for injunctive relief should be **DISMISSED**.

C) <u>First Amendment Claims</u>

Plaintiff alleges that the named defendants violated his First Amendment rights by confiscating his legal documents, newspapers, books, magazines, writing materials and withholding plaintiff's mail. It appears from the complaint that plaintiff is alleging that the defendants have violated his right to send and receive mail as well as his right to access to court. For the reasons set forth below, the undersigned recommends that the Court **DISMISS** plaintiff's First Amendment claims.

1) <u>Right to Send and Receive Mail</u>

Plaintiff alleges that his newspapers, magazines, books, writing materials and mail from his family were confiscated and withheld. Dkt. 5 at ¶¶ 66-72. However, plaintiff does not identify a specific individual who confiscated and withheld these items. Plaintiff's complaint fails to set forth the specific factual bases upon which he claims each defendant is liable. Additionally, plaintiff's complaint does not allege that his mail and reading material were confiscated pursuant to a policy or custom. Accordingly, the complaint fails to allege municipal liability or the personal participation of the defendants. Therefore, plaintiff's claims alleging a violation of his First Amendment rights for confiscating his mail and similar materials should be **DISMISSED.**

2) <u>Right of Access to the Courts</u>

The complaint also alleges that defendants violated plaintiff's First Amendment rights by denying him the right of access to the courts.

Inmates have "a constitutional right of access to the courts." *Cornett v. Donovan,* 51 F.3d 894, 897 (9th Cir. 1995). That right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers" by providing them with

1    "adequate law libraries or adequate assistance from persons trained in the law." *Lewis*

2    *v. Casey,* 518 U.S. 343, 346 (1996) (quoting *Bounds v. Smith,* 430 U.S. 817, 828

3    (1977)). The Ninth Circuit has held that the legal assistance of appointed counsel is a

4    constitutionally permissible means of access to the courts. *United States v. Wilson*, 690

5    F.2d 1267, 1271 (9th Cir. 1982).

6    In addition to showing a denial of access to the courts, a plaintiff must also show

7    that the alleged inadequacies or deprivation, caused actual injury. *Lewis*, 518 U.S. at

8    348. An "actual injury" is "actual prejudice with respect to contemplated or existing

9    litigation, such as the inability to meet a filing deadline or to present a claim." *Id* at 348-

10   49. The requirement that an inmate must show an actual injury "derives ultimately from

11   the doctrine of standing." *Id.* at 349.

12   The precise contours of the access to the courts right described in *Bounds* and

13   *Lewis* -- as it would apply to pretrial detainees -- is uncertain. *See, Cornett v. Donovan,*

14   51 F.3d at 898 n.4; *Milton v. Morris*, 767 F.2d 1443, 1446 n.2 (9th Cir. 1985); *Kaiser v.*

15   *Cnty. of Sacramento*, 780 F. Supp. 1309, 1313 (E.D. Cal. 1991). However, even with

16   the uncertain contours of a pretrial detainee's right to access the courts, plaintiff's

17   complaint fails to state a claim because it does not allege facts to plausibly show that he

18   was denied access to the courts or that he suffered any actual injury.

19   Here, plaintiff is alleging that he was denied access to his legal documents and

20   that this violated his right of access to the courts related to his criminal trial. Dkt. 5 at ¶¶

21   54-65. However, plaintiff does not allege that he was completely denied access to the

22   documents, instead plaintiff alleges that he was able access the documents on a limited

23   basis. *Id.* at ¶¶ 57, 65. Additionally, plaintiff was represented by an attorney in his

24

25

criminal trial and was able to meet with the attorney while he was at Clark County Jail. *See*, Dkt. 5 at ¶ 55; Dkt. 5-1 at p. 1-4. Plaintiff does not allege that he was denied access to his attorney or that any defendants prevented him from filing any documents or otherwise participating in his criminal trial. Accordingly, plaintiff's complaint fails to allege that he was denied access to the courts.

Further, plaintiff's complaint fails to allege an actual injury from any purported denial of access to the courts. Plaintiff alleges that the limitation on access to his legal documents were "problematic" and "had an adverse effect on the plaintiff's ability to assist in the defense of his criminal case." However, plaintiff's factual allegations do not demonstrate how plaintiff was denied access to the courts or how he suffered any actual prejudice in his criminal trial. The undersigned recommends the Court find that plaintiff has failed to allege a set of facts that would support a plausible claim for denial of access to the courts.

For the reasons set forth above, the undersigned recommends that the Court **DISMISS** plaintiff's First Amendment claims.

D) Fourth Amendment Claims

Plaintiff alleges that defendants violated his Fourth Amendment rights by implementing the Step Program and by authorizing and conducting routine strip searches. Dkt. 5 at ¶ 132-136. For the reasons set forth below, the undersigned recommends that the Court **DISMISS** plaintiff's Fourth Amendment claims against defendants Tangen, Barnett, and Bishop. However, the Court should **NOT DISMISS** plaintiff's Fourth Amendment claims against defendants Gentry, Austin, Ashworth, Anderson, Plotner, Schaub and Wolfe.

1         The Courts have recognized that pretrial detainees do not forfeit all constitutional

2    protections by reason of their confinement. *Bell v. Wolfish*, 441 U.S. 520, 546 (1979).

3    However, "the fact of confinement as well as the legitimate goals and policies of the

4    penal institution limits these retained constitutional rights." *Bell*, 441 U.S. at 546.

5    Determining whether a search is reasonable in the context of incarceration requires a

6    case-by-case "balancing of the need for the particular search against the invasion of

7    personal rights that the search entails." *Byrd v. Maricopa County Sheriff's Dep't*, 629

8    F.3d 1135, 1141 (9th Cir. 2011) (en banc), *cert denied,* 563 U.S. 1033 (2011). To

9    conduct this case specific evaluation, the Court must consider: "(1) the scope of the

10   particular intrusion, (2) the manner in which it is conducted, (3) the justification for

11   initiating it, and (4) the place in which it is conducted. *Byrd*, 629 F.3d at 1141 (internal

12   quotations omitted).

13        While not all routine strip search procedures are unreasonable, the courts have

14   acknowledged that searches that are unnecessary, unduly humiliating, excessive,

15   vindictive, or unrelated to legitimate government interests, violate the Fourth

16   Amendment. *Shorter v. Baca*, 895 F.3d 1176, 1189 (9th Cir. 2018) (citing *Michenfelder*

17   *v. Sumner*, 860 F.2d 328, 332-33 (9th Cir. 2018)).

18        Further, with regards to strip searches at jails, the courts generally defer to the

19   judgment of correctional officers, because "whether a policy is reasonably related to

20   legitimate security interest is peculiarly within the province and professional expertise of

21   correctional officers." *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 328 (2012).

22   However, that deference does not extend to sanctioning violations of a detainee's rights

23   and courts have refused to provide this deference when the challenged search is

24

25

unnecessary, unreasonable or unduly humiliating to the detainee. *Shorter*, 895 F.3d at 1187-89 (discussing *Florence*, 566 U.S. 318); *See, Byrd,* 629 F.3d at 1141-42.

Plaintiff alleges that the defendants subjected plaintiff to strip searches several times a day despite plaintiff being held in administrative segregation with video monitoring and only being allowed out of the cell for one hour every three days. *Id.* at ¶¶ 11, 50. Plaintiff also alleges that he observed that about half of the strip searches occurred between the hours of 11:30pm and 4:30 am, and that they were often conducted within 45 minutes of plaintiff falling asleep. *Id.* at 35-36.

Plaintiff claims that the defendants conducted the strip searches in a humiliating and harassing manner by touching the metal detecting wand to plaintiff's genitals and rectum before scanning his face and sometimes touching his face with the wand. *Id.* at ¶ 31. Plaintiff alleges that these searches were conducted in front of deputies that would laugh at plaintiff during the search. *Id.* at ¶ 34. Further, plaintiff states that defendants told him that the Step Program and the strip searches were punishment or "pay back" for an alleged breach of security measures and for causing Clark County Jail "a great deal of embarrassment and problems for jail administration." *Id.* at ¶ 25, 46, 47, 130.

Plaintiff is alleging that defendants Gentry, Austin, Ashworth, Anderson, Plotner, Schaub, and Wolfe, ordered, supervised and conducted an excessive and unnecessary number of strip searches on plaintiff. It also appears that plaintiff is alleging that these defendants conduct these strip searches in a manner designed to harass and humiliate plaintiff. Finally, plaintiff asserts that defendants stated that the searches were designed to be vindictive and not related to a valid security interest.

Therefore, plaintiff has sufficiently alleged that defendants Gentry, Austin, Ashworth, Anderson, Plotner, Schaub, and Wolfe violated his Fourth Amendment rights in their individual capacities. Additionally, plaintiff is alleging that defendants Gentry, Austin, Ashworth, Anderson, Plotner, Schaub, and Wolfe, conducted these purported violations in accordance with an official policy designed by defendant Gentry. Accordingly, plaintiff has also sufficiently alleged a claim against these defendants in their official capacities.

Plaintiff's complaint alleges that defendant Tangen authorized "routine strip searches of plaintiff." Dkt. 5 at ¶ 13. As has been discussed, the use of strip searches on a pretrial detainee is not necessarily a Fourth Amendment violation. Plaintiff alleges that the manner in which certain defendants conducted the strip searches violated his Fourth Amendment rights. The complaint does not allege that defendant Tangen participated in, conducted or ordered any searches. Accordingly, the complaint fails to allege a claim against defendant Tangen in his individual capacity. Additionally, plaintiff's complaint does not identify the content of the policy purportedly implemented by defendant Tangen. It is not clear from the complaint whether the strip searches were conducted pursuant to this policy or whether defendant Tangen's policy caused or authorized a constitutional violation. For this reason, plaintiff's complaint also fails to allege a claim against defendant Tangen in his official capacity.

Plaintiff's complaint fails to allege a claim against defendants Barnett and Bishop. With regards to defendants Barnett and Bishop, the only conduct alleged in the complaint is the denial of plaintiff's grievances. However, the denial of a grievance does not establish personal participation if it lacks a connection to the alleged violation of a

1   constitutional right. *See, Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)

2   ("rubber-stamp[ing]" of grievances does not show personal participation). Additionally,

3   plaintiff's complaint does not allege defendants Barnett or Bishop denied the grievance

4   as part of a policy, custom, or with deliberate indifference to plaintiff's constitutional

5   rights. Plaintiff's complaint also does not state that defendant Barnett or Bishop are

6   officials with final authority to make a policy decision or ratify the alleged misconduct.

7   Therefore, the complaint fails to allege a cause of action against defendants Barnett and

8   Bishop in their official or individual capacities.

9       For the reasons set forth above, the undersigned recommends that the Court

10  should **DISMISS** plaintiff's Fourth Amendment claims against defendants Tangen,

11  Barnett and Bishop. However, the Court should **NOT DISMISS** plaintiff's Fourth

12  Amendment claims against defendants Gentry, Austin, Ashworth, Anderson, Plotner,

13  Schaub, and Wolfe.

14      E)  <u>Eighth Amendment</u>

15      Plaintiff alleges that the conduct described in his complaint violated his Eighth

16  Amendment rights. "Eighth Amendment protections apply only once a prisoner has

17  been convicted of a crime, while pretrial detainees are entitled to the potentially more

18  expansive protections of the Due Process Clause of the Fourteenth Amendment."

19  *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1246 n. 5 (9th Cir. 2016) (citing *Kingsley v.*

20  *Hendrickson*, 135 S. Ct. 2466 (2015)).

21      Plaintiff was a pre-trial detained at all times described in the complaint. Dkt. 5 at ¶

22  2. Accordingly, plaintiff's claims regarding his conditions of confinement are governed

23  by the Fourteenth Amendment, not the Eighth Amendment.

24

25

1     For this reason, the Court should **DISMISS** plaintiff's Eighth Amendment claims.

2     F) <u>Fourteenth Amendment – Due Process</u>

3     Plaintiff alleges that the defendants' conduct violated plaintiff's Fourteenth

4     Amendment rights. The undersigned recommends that the Court should **GRANT IN**

5     **PART** and **DENY IN PART** defendants' motion as discussed below.

6     "Eighth Amendment protections apply only once a prisoner has been convicted of

7     a crime, while pretrial detainees are entitled to the potentially more expansive

8     protections of the Due Process Clause of the Fourteenth Amendment." *Mendiola-*

9     *Martinez v. Arpaio*, 836 F.3d 1239, 1246 n. 5 (9th Cir. 2016) (*citing Kingsley v.*

10    *Hendrickson*, 135 S. Ct. 2466 (2015)). Even though conditions of confinement claims

11    brought by pretrial detainees arise under the Due Process Clause, the guarantees of

12    the Eighth Amendment "provide a minimum standard of care for determining rights as a

13    pretrial detainee." *Gordon v. Cty. Of Orange,* 888 F.3d 1118, 1122 (9th Cir. 2018).

14    Nevertheless, because deliberate indifference to health or safety claims by pretrial

15    detainees are analyzed under the Fourteenth Amendment's Due Process Clause, the

16    same objective evidence standard applies to such claims. *Id.* at 1123-24; *Frost v.*

17    *Agnos,* 152 F.3d 1124, 1128 (9th Cir. 1998).

18    To satisfy the objective standard for deliberate indifference claims, the

19    deprivation alleged "must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan,* 511

20    U.S. 825, 834 (1994) (citation omitted). That is, the institution official's "act or omission

21    must result in the denial of 'the minimum civilized measure of life's necessities.'" *Id.* For

22    claims based on failure to prevent harm, the plaintiff also must show he or she was

23    "incarcerated under conditions posing a substantial risk of serious harm." *Id.*

24

25

With regards to the constitutionality of conditions of confinement or restrictions of pretrial detainees under the Due Process Clause, the proper inquiry is whether the conditions amount to punishment of the detainee. *Bell*, 441 U.S. at 535. Because a pretrial detainee has not be adjudicated guilty of any crime, the government "may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment or otherwise violate the Constitution." *Id.* at 536.

A pretrial detainee may show that they have been unconstitutionally punished by demonstrating that the action was taken with an expressed intent to punish or that the actions are not rationally related to a legitimate nonpunitive government purpose. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). If the conditions of confinement that is being challenged is arbitrary or purposeless, "a court permissibly may infer that the purpose of the governmental action is punishment." *Bell*, 441 U.S. at 539.

### 1) Visitation Rights

Plaintiff alleges that defendant Gentry's Step Program violated plaintiff's rights by denying plaintiff the right to have his family visit him while at Clark County Jail. Dkt. 5 at ¶ 49; Dkt. 5-1 at p. 2-4.

Generally, prison inmates do not have a right to family visits. *Macedon v. California Dep't of Corrections*, 67 Fed. Appx. 407, 408 (9th Cir. 2003). Similarly, "the Constitution does not require that detainees be allowed contact visits when responsible, experienced administrators have determined, in their sound discretion, that such visits will jeopardize the security of the facility." *Block v. Rutherford*, 468 U.S. 576, 589 (1984). However, as has been discussed, in the context of pretrial detainees, a policy violates

1   the Fourteenth Amendment if it is punitive, unrelated to a rational security interest or

2   excessive in relation to that purpose. *Kingsley*, 135 S. Ct. at 2474.

3       Here, plaintiff is alleging that the Step Program denied him family visitation as a

4   punitive measure. Dkt. 5 at ¶¶ 46, 49. Plaintiff does not allege that any defendant

5   personally prevented his family from visiting him while at Clark County Jail. Accordingly,

6   plaintiff's complaint fails to allege a claim against any defendant in their individual

7   capacity. However, the complaint alleges that his Fourteenth Amendment rights were

8   violated pursuant to the official Step Program implemented by defendant Gentry. *Id.* at ¶

9   46-49. Accordingly, plaintiff has alleged a claim against defendant Gentry in his official

10  capacity for implementing a policy unconstitutionally designed to punish plaintiff.

11      Accordingly, the undersigned recommends that the Court should **DISMISS** this

12  claim against all defendants in their individual capacity. However, the Court should **NOT**

13  **DISMISS** this claim against defendant Gentry in his official capacity.

14          2)  Exercise Time Outside of the Cell

15      Plaintiff's complaint also alleges that the defendants violated his constitutional

16  rights by restricting plaintiff's ability to spend time out of his cell – he was allowed to

17  spend time outside his cell for one hour every three days.

18      The Ninth Circuit Court of Appeals has held that "the Constitution requires jail

19  officials to provide outdoor recreation opportunities, or otherwise meaningful recreation"

20  to pretrial detainees. *Shorter*, 895 F.3d at 1185; *See also*, *Pierce v. County of Orange*,

21  526 F.3d 1190, 1208 (9th Cir. 2008) (holding that conditions providing violent pretrial

22  detainees held in administrative segregation, only 90 minutes of exercise per week did

23  not comport with constitutional standards).

24

25

Here, plaintiff asserts that in accordance with defendant Gentry's Step Program, plaintiff was only permitted to have one hour out of his cell every 72 hours. Dkt. 5 at ¶ 50; Dkt 5-1 at p. 2-4. Plaintiff further alleges that during the one hour out of his cell he was confined to a small room outside of his cell, was not allowed outside of the room, and was not provided access to exercise or recreation equipment. Dkt. 5 at ¶¶ 51-53. Plaintiff states that during the 17 months he was housed at Clark County Jail, he was only allowed to the outdoor recreation area four times. *Id.* at 53.

Plaintiff alleges that defendant Gentry's Step Program implemented these conditions as a form of punishment and retribution for embarrassing Clark County Jail. *Id.* at ¶¶ 46-47. Plaintiff has sufficiently alleged a claim against defendant Gentry in his individual and official capacity. Plaintiff does not identify any other defendants who allegedly violated his rights by denying him time outside of his cell.

For the above-mentioned reasons, the undersigned recommends that the Court should **NOT DISMISS** plaintiff's claims regarding recreation time against defendant Gentry. The undersigned recommends that the Court should **DISMISS** plaintiff's recreation claims against all other defendants.

### 3) Oral Hygiene and Shaving Materials

Next, plaintiff's complaint alleges that he was denied access to oral hygiene supplies and items needed to shave. Dkt. 5 at ¶¶ 75-77. These allegations go beyond the limitations purportedly prescribed by defendant Gentry in the Step Program. Dkt. 5-1 at p. 2-4. Plaintiff does not identify any defendant or policy responsible for these alleged violations. Accordingly, these claims should be **DISMISSED**.

1

### 4)  Unsanitary Conditions

Plaintiff alleges that he was denied access to personal hygiene items such as soap and toilet paper. Dkt. 5 at ¶¶ 73-74, 106. Plaintiff further alleges that he was forced to stay in unsanitary conditions as a form of punishment. *Id.* at 104, 106, 111-112.

The Ninth Circuit Court of Appeals has determined that "[j]ail officials have a duty to ensure that detainees are provided adequate shelter, food, clothing, sanitation, medical care and personal safety." *Shorter*, 895 F.3d at 1185 (citing to *Johnson v. Lewis,* 217 F.3d 726, 731 (9th Cir. 2000)). The courts have stated that "[u]nquestionably, subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995). The Ninth Circuit has held that routinely denying a pretrial detainee access to a shower without a legitimate security purpose constitutes a violation of the Fourteenth Amendment. *Shorter*, 895 F.3d at 1185-87 (finding that denying plaintiff a shower for 6-8 days without justification might violate the plaintiff's Fourteenth Amendment rights).

Plaintiff's complaint alleges that he had mental health problems that caused hallucinations. Dkt. 5 at ¶ 100. Plaintiff alleges that as a result of the hallucinations he spread feces on the smoke detectors, walls and cameras in his cell. *Id.* at ¶¶ 100-101. Plaintiff alleges that as punishment for plaintiff's actions, and despite knowing of plaintiff's mental health concerns, defendant Gentry ordered that plaintiff remain in his feces covered cells without soap or any other cleaning supplies for 10 days. *Id.* at ¶¶ 101-104.

1    Plaintiff also alleges that during this time he was not allowed to use any utensils

2    and was forced to accept food with his feces covered hands. Dkt. 5 at ¶ 107. Plaintiff

3    also alleges that defendants Dougher and Plotner were aware of these conditions, that

4    plaintiff requested materials to clean himself and the cell, and the defendants denied

5    these requests. *Id.* at ¶ 111-112.

6    Based on the allegations of his complaint, plaintiff has sufficiently alleged that

7    defendants Gentry, Dougher and Plotner violated plaintiff's rights by subjecting him to

8    unconstitutionally unsanitary conditions for a punitive purpose. However, plaintiff does

9    not allege that this conduct occurred pursuant to any official policy or custom or that the

10    conduct was ratified by a supervising official with the authority to make policy.

11    Accordingly, plaintiff has only alleged a claim against defendants Gentry, Dougher and

12    Plotner in their individual capacities, not their official capacities.

13    Based on the foregoing, the Court should **NOT DISMISS** plaintiff's claims

14    regarding unsanitary conditions against defendant Gentry, Dougher, and Plotner in their

15    individual capacities. The Court should **DISMISS** these claims against all other

16    defendants.

17        5) Access to Clothing or Bedding

18    Plaintiff's complaint alleges that he was denied access to clothing or bedding

19    during his time at Clark County Jail. Dkt. 5 at ¶¶ 79-84. Plaintiff's complaint alleges that

20    as a form of punishment he was denied clothing other than a suicide smock and was

21    denied any bedding other than a mattress and a second suicide smock to use as a

22    blanket. *Id.* These allegations go beyond the limitations described by defendant Gentry

23    in the Step Program. Dkt. 5-1 at p. 2-4. Plaintiff does not identify which jail officials

24

25

1   allegedly denied him clothing and bedding. Additionally, plaintiff does not allege a jail

2   policy or custom that purportedly caused this violation. Accordingly, plaintiff's claims

3   relating to clothing and bedding should be **DISMISSED**.

4         6)  <u>Mental Health Treatment</u>

5         Plaintiff next alleges that defendants Gentry, Dougher, and Plotner

6   unconstitutionally denied plaintiff's mental health treatment requests. Dkt. 5 at ¶ 97-115.

7         Claims for violations of the right to adequate health care brought by pretrial

8   detainees, "must be evaluated under an objective deliberate indifference standard."

9   *Gordon v. Cty. of Orange,* 888 F.3d 1118, 1124-25 (9th Cir. 2018). To demonstrate

10  such a violation, the detainee must show:

11        (i)      the defendant made an intentional decisions with respect to the

12              conditions under which the plaintiff was confined; (ii) those

            conditions put the plaintiff at a substantial risk of suffering serious

13              harm; (iii) the defendant did not take reasonable available measure

            to abate that risk, even though a reasonable official in the

14              circumstances would have appreciated the high degree of risk

            involved –making the consequences of the defendant's conduct

15              obvious; and (iv) by not taking such measures, the defendant

            caused the plaintiff's injuries.

16

17  *Id.* In regard to the third element, the defendant's conduct must be "objectively

18  unreasonable." *Gordon,* 888 F.3d at 1125. However, "mere lack of due care" by the

19  defendant is insufficient to establish liability. *Id.* (quoting *Castro v. County of Los*

20  *Angeles,* 833 F.3d 1060, 1071 (9th Cir. 2016). Rather, the detainee must "prove more

21  than negligence," although "less than subjective intent" i.e., "something akin to reckless

22  disregard." *Id.*

23        To establish that a jail official's failure to respond adequately to a medical

24  condition, plaintiff must show his medical condition is "objectively a serious one." *Brock*

25

1  *v. Wright,* 315 F.3d 158, 162 (2nd Cir. 2003). Seriousness of the condition may be

2  present where there is:

3  > … The existence of an injury that a reasonable doctor or patient would find
> important and worthy of comment or treatment; the presence of a medical
> condition that significantly affects an individual's daily activities; or the
> existence of chronic and substantial pain…

6  *McGuckin*, 974 F.2d at 1059-60; *see also Brock*, 315 F.3d at 162. A mental

7  condition may qualify as a serious medical need. *Doty v. Cnty. of Lassen*, 37

8  F.3d 540, 546 (9th Cir. 1994).

9    Here, plaintiff alleges that defendant Gentry placed plaintiff in administrative

10  segregation and instructed other officials to subject plaintiff to punitive conditions and

11  sleep deprivation that caused plaintiff's mental health conditions. Dkt. 5 at ¶¶ 97-100.

12  Plaintiff also alleges that defendants Plotner and Dougher knew of these conditions and

13  chose to leave plaintiff in the unsafe conditions. *Id.* at ¶¶ 111-112. This is sufficient to

14  meet the first element against defendants Gentry, Plotner, and Dougher. Plaintiff alleges

15  that these conditions caused a mental health crisis, hallucinations, and an unsafe and

16  unsanitary living condition. *Id.* at ¶¶ 97-111. Plaintiff also alleges that the medical staff

17  raised concerns regarding plaintiff's health to the officers at Clark County Jail and

18  eventually felt it necessary to intervene to provide medical attention. *Id.* at ¶¶ 110-111,

19  114. This sufficiently alleges that plaintiff suffered a serious condition that reasonable

20  medical professionals found worthy of comment and treatment. These allegations also

21  sufficiently allege that the conditions caused a substantial risk of causing serious harm.

22    Next, plaintiff alleged defendants Gentry, Plotner and Dougher interfered with the

23  Clark County Jail psychologist's prescribed treatment. *Id.* at ¶ 114. Plaintiff's allegations

24

25

are sufficient to meet the third and fourth elements. As such, plaintiff has sufficiently alleged a claim for violation of his right to adequate health care against defendants Gentry, Plotner and Dougher. However, plaintiff does not allege that this conduct occurred pursuant to any official policy or custom or that the conduct was ratified by a supervising official with the authority to make policy. Accordingly, plaintiff has only alleged a claim against defendants Gentry, Dougher and Plotner in their individual capacities, not their official capacities.

For the reasons set forth above, the Court should **NOT DISMISS** this claim against defendants Gentry, Plotner and Dougher in their individual capacities but should **DISMISS** the claim against all other defendants.

7) <u>Nutraloaf</u>

Plaintiff's complaint alleges that as punishment for behavior caused by his mental health conditions, defendant Gentry placed plaintiff on a nutraloaf diet. Dkt. 5 at ¶ 107.

While food is a basic human need protected by the Constitution, the food must only be adequate to maintain health, it need not be tasty or aesthetically pleasing. *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993). However, providing pretrial detainees food that is contaminated, moldy or otherwise inedible may constitute a violation under Fourteenth Amendment. *See, Graves v. Arpaio*, 623 F.3d 1043, 1050-51 (9th Cir. 2010).

Here, plaintiff alleges that the nutraloaf that he was provided was unpleasant to eat and unpalatable. Dkt. 5 at ¶117. This by itself is an insufficient factual basis to allege a cause of action because it does not allege that the nutraloaf was inadequate to maintain health. However, plaintiff alleges that defendant Gentry forced plaintiff to

accept his food with feces-soiled hands and eat it without utensils in a feces-covered room. *Id.* at ¶ 107.

These factual allegations are sufficient to state a claim under Section 1983 for a violation of the Fourteenth Amendment, because plaintiff alleges that defendants provided his food under conditions that would contaminate the food and make it inedible. Accordingly, the undersigned recommends that the Court find that plaintiff has alleged sufficient facts to state a claim against defendant Gentry for failure to provide adequate food. However, plaintiff does not allege that this conduct occurred pursuant to any official policy or custom or that the conduct was ratified by a supervising official with the final authority to make policy. Accordingly, plaintiff has only alleged a claim against defendant Gentry in his individual capacity, not his official capacity.

For the above stated reasons, the Court should **NOT DISMISS** this claim against defendant Gentry in his individual capacity, but should **DISMISS** the claim against all other defendants.

### 8) Routine Strip Searches and Leg Shackles

Finally, plaintiff alleges that the named defendants subjected plaintiff to routine strip searches as punishment and used leg shackles in a manner to intentionally harm plaintiff. Dkt. 5 at ¶¶ 25-44, 85-96.

As has been discussed regarding the constitutionality of conditions of confinement or restrictions of pretrial detainees under the Due Process Clause, the proper inquiry is whether the conditions amount to punishment of the detainee. *Bell*, 441 U.S. at 535. A pretrial detainee may show that they have been unconstitutionally punished by demonstrating that the action was taken with an expressed intent to punish

1     or that the actions are not rationally related to a legitimate nonpunitive government

2     purpose. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). If the conditions of

3     confinement are arbitrary or purposeless, "a court permissibly may infer that the

4     purpose of the governmental action is punishment." *Bell*, 441 U.S. at 539.

5            Here, plaintiff alleges that defendants Gentry, Austin, Ashworth, Anderson,

6     Plotner, Schaub, and Wolfe violated plaintiff's Fourteenth Amendment rights by

7     conducting excessive searches and using leg shackles as a form of punishment. Dkt. 5

8     at ¶¶ 41, 46, 93-94. Additionally, plaintiff alleges that these searches and the use of

9     shackles were conducted and ordered in accordance with an official Step Program

10    designed by defendant Gentry. Dkt. 5 ¶¶ 25-45, 85-96. Accordingly, plaintiff has

11    sufficiently alleged a violation of the Fourteenth Amendment for the use of routine strip

12    searches and leg shackles against defendants Gentry, Austin, Ashworth, Anderson,

13    Plotner, Schaub, and Wolfe in their individual and official capacities.

14           Plaintiff alleges that defendant Tangen authorized "routine strip searches of

15    plaintiff." Dkt. 5 at ¶ 13. The complaint does not allege that defendant Tangen

16    participated in, conducted or ordered any searches. Accordingly, the complaint fails to

17    allege a claim against defendant Tangen in his individual capacity. Additionally,

18    plaintiff's complaint does not identify the content of the policy purportedly implemented

19    by defendant Tangen or that the policy was intentionally punitive. It is not clear from the

20    complaint whether the purported strip searches were conducted pursuant to this policy

21    or whether defendant Tangen's policy caused or authorized a constitutional violation.

22    For this reason, plaintiff's complaint fails to allege a claim against defendant Tangen.

23

24

25

1    With regards to defendants Barnett and Bishop, the only conduct alleged in the

2    complaint is the denial of plaintiff's grievances. However, the denial of a grievance does

3    not establish personal participation if it lacks a connection to the alleged violation of a

4    constitutional right. *See, Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)

5    ("rubber-stamp[ing]" of grievances does not show personal participation). Therefore,

6    plaintiff fails to allege a claim against defendants Barnett and Bishop in their individual

7    capacities. Additionally, plaintiff's complaint does not allege defendants Barnett or

8    Bishop denied the grievance as part of a policy, custom, or with deliberate indifference

9    to plaintiff's constitutional rights. Plaintiff's complaint also does not state that defendants

10    Barnett or Bishop are officials with final authority to make a policy decision or ratify the

11    alleged misconduct. Therefore, the complaint fails to allege a cause of action against

12    defendants Barnett and Bishop in their official or individual capacities.

13    For the reasons set forth above, the Court should **DISMISS** plaintiff's claims

14    against defendants Tangen, Barnett and Bishop. However, the Court should **NOT**

15    **DISMISS** plaintiff's Fourth Amendment claims against defendants Gentry, Austin,

16    Ashworth, Anderson, Plotner, Schaub, and Wolfe.

17    G) Fourteenth Amendment – Equal Protection

18    Plaintiff alleges that defendants violated the Equal Protection Clause of the

19    Fourteenth Amendment by treating plaintiff differently than other detainees. Dkt. 5 at ¶

20    124-130. For the reasons set forth below, the Court should **DISMISS** plaintiff's Equal

21    Protection Claims.

22    The Equal Protection Clause of the Fourteenth Amendment requires that the

23    State treat all similarly situated people equally. *Furnace v. Sullivan*, 705 F.3d 1021,

24

25

1030 (9th Cir. 2013). A plaintiff may state an equal protection violation by showing that

the "defendants acted with an intent or purpose to discriminate against the plaintiff

based upon membership in a protected class." *Id.* To do this the plaintiff must identify

the relevant class of similarly situated people to which plaintiff belongs. *Id.* Alternatively,

the courts have recognized that equal protection claims may be brought by "a 'class of

one,' where the plaintiff alleges that [he] has been intentionally treated differently from

others similarly situated and that there is no rational basis for the difference in

treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The "class of one" theory

does not allege that the defendants discriminated against a group, but rather that the

defendants treated the plaintiff, in particular, arbitrarily. *Lazy Y Ranch LTD v. Behrens*,

546 F.3d 580, 592 (9th Cir. 2008).

Here, plaintiff alleges that "there are numerous other inmates who have a far

worse infraction and behavior history than the plaintiff, yet they were not put on a Step

Program." Dkt. 5 at ¶ 125. Plaintiff also alleges that he was placed on a Step Program

before a pretrial detainee named Gregory Wright who purportedly had a worse infraction

history than plaintiff. *Id.* at ¶ 129.

Plaintiff does not allege that he is a member of protected class. Accordingly, his

complaint does not state a claim for discrimination on the basis of membership in a

protected class. Plaintiff alleges that the defendants committed an equal protection

violation by placing him on a Step Program while not placing other detainees, who had

a purportedly worse behavioral history, on a similar program. This conclusory allegation

that the other detainees were somehow "worse" than plaintiff is insufficient to state a

claim for an equal protection violation, because it does not demonstrate how plaintiff was similarly situated to these unidentified detainees.

Plaintiff also alleges that the defendants violated plaintiff's Equal Protection rights by treating him more punitively than another detainee who had more infractions than plaintiff. This allegation also fails to state a claim under the "class of one" theory, because plaintiff does not allege that he was treated differently than similarly situated detainees. Plaintiffs complaint alleges that he and Gregory Wright were both placed in a Step Program, but Wright committed more infractions before being placed in the Step Program. However, plaintiff's complaint does not explain the nature of Wright's infractions or the context under which he was placed in the Step Program or the limitations placed on Wright in the Step Program. Accordingly, plaintiff has not alleged that plaintiff and Wright were treated differently despite being similarly situated.

For these reasons, the Court should **DISMISS** plaintiff's Equal Protection claims.

H)  <u>State Law Tort Claims</u>

Finally, defendants argue that plaintiff's state law tort claims should be dismissed because plaintiff failed to file his damage claims with Clark County prior to commencing this action. Dkt. 17. The undersigned recommends that the Court **DISMISS** plaintiff's state law tort claims for assault.

When a party wishes to commence a tort action for damages against a local governmental entity in Washington, or any of that entity's officers, employees, or volunteers acting in such capacities, the party must first "present" the tort claim to that entity. RCW 4.96.020(2)-(4). The party must present these claims using the standard tort claim form provided by the office of risk management in the department of

1   enterprise services. RCW 4.96.020(3). A party cannot commence the action until 60

2   days after presenting the claim. RCW 4.96.020(4). Although only substantial compliance

3   is required for the content of the form, Washington case law requires strict compliance

4   with the filing procedures, and the proper remedy for failure to provide notice of the

5   claim is dismissal of the suit. *Hintz v. Kitsap County*, 92 Wn.App. 10, 14 (1998).

6        Here, plaintiff's complaint alleges claims for assault under Washington state law

7   against the officers and employees of Clark County Sherriff's Department and the Clark

8   County Jail. Dkt. 5. Accordingly, pursuant to RCW 4.96.020 plaintiff was required to file

9   the proper tort claim form with Clark County at least 60 days prior to filing this action.

10  Plaintiff's complaint does not allege that he has filed this form with Clark County. In his

11  response to defendant's motion, plaintiff asserts that he has filed the required tort claims

12  and that discovery "will prove this." Dkt. 18 at p. 9. Nothing in the complaint or the

13  record demonstrates that plaintiff has met the procedural requirements set out in RCW

14  4.96.020. Accordingly, plaintiff has failed to properly plead that he has met the

15  procedural requirements for bringing his state law tort claims.

16       For this reason, the Court should **DISMISS** plaintiff's claims for assault under

17  Washington state law.

18       I)   Qualified Immunity

19       Defendants also argue that plaintiff's claims for damages should be dismissed

20  because defendants are entitled to qualified immunity. Dkt. 17 at p. 19-20.

21       When a defendant asserts qualified immunity at this early stage of litigation,

22  dismissal is not appropriate unless the Court can determine from the complaint itself

23  that qualified immunity applies. *See*, *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir.

24

25

1   2016). However, because evaluation of facts necessary to establish qualified immunity

2   will often require exploration of evidence outside the allegations stated in a complaint

3   and any documents incorporated by reference, an issue of qualified immunity may not

4   be ready for consideration or ruling when it is raised by the defendant on Rule 12(b)(6)

5   or 12(c) motions. *Wong v. United States*, 373 F.3d 952, 956-57 (9th Cir. 2004) (noting

6   that while defendants are entitled to raise qualified immunity in a motion to dismiss, it is

7   difficult for courts to decide qualified immunity at the motion to dismiss stage, because it

8   forces the Court to decide "far-reaching constitutional questions on a nonexistent factual

9   record," and suggesting the issues is better left for summary judgment); *Morley v.*

10  *Walker*, 175 F.3d 756, 761 (9th Cir. 1999) (holding that, in light of the fact that all

11  allegations in the complaint must be regarded as true on a motion to dismiss, "dismissal

12  [on qualified immunity grounds] for failure to state a claim under 12(b)(6) is

13  inappropriate.").

14      Accordingly, the undersigned recommends that, because the factual record is

15  under-developed in this early stage of litigation, it would be premature to decide

16  defendants' assertion of qualified immunity without discovery. For this reason, the

17  undersigned recommends that the Court deny without prejudice the portions of

18  defendants' motion that are premised on qualified immunity arguments, at this stage of

19  the litigation.

20      It is important to resolve the issue of qualified immunity at the earliest possible

21  stage of litigation. *Wood v. Moss*, 572 U.S. 744, 755 n.4 (2014). Once an evidentiary

22  record has been sufficiently developed, the defendants will be free to move for summary

23  judgment based on qualified immunity. Additionally, the Court, or the Magistrate Judge

24

25

on re-referral, may manage the discovery process to facilitate a prompt resolution of the issue of qualified immunity, before allowing discovery on the remaining issues of the case.

<u>RECOMMENDATION</u>

Based on the foregoing discussion, the undersigned recommends that the Court **GRANT IN PART** and **DENY IN PART** defendants motion (Dkt. 17) as follows:

- Motion to Strike: The Court should **DENY** defendants' motion to strike.

- Claims for Injunctive Relief: The Court should **DISMISS** plaintiff's claims for injunctive relief for lack of standing, without prejudice and with leave to amend.

- First Amendment Claims: The Court should **DISMISS** plaintiff's First Amendment claims without prejudice and with leave to amend.

- Fourth Amendment Claims: The Court should **DISMISS** plaintiff's Fourth Amendment claims against defendants Tangen, Barnett, and Bishop in their individual capacities with prejudice. The Court should **DISMISS** plaintiff's Fourth Amendment claims against defendants Tangen, Barnett and Bishop in their official capacities without prejudice and with leave to amend. The Court should **NOT DISMISS** plaintiff's Fourth Amendment claims against defendants Gentry, Austin, Ashworth, Anderson, Plotner, Schaub and Wolfe.

- Eighth Amendment Claims: The Court should **DISMISS** plaintiff's Eighth Amendment Claims with prejudice and without leave to amend.

- Visitation Right Claims: The Court should **DISMISS** plaintiff's claims based on violation of his visitation rights against all defendants in their individual capacities without prejudice and with leave to amend. However, the Court should **NOT DISMISS** this claim against defendant Gentry in his official capacity.

- Exercise and Recreation Claims: The Court should **NOT DISMISS** these claims against defendant Gentry. The Court should **DISMISS** these claims against all other named defendants without prejudice and with leave to amend.

- Oral Hygiene and Shaving Materials Claims: The Court should **DISMISS** these claims without prejudice and with leave to amend.

- Sanitary Conditions Claims: The Court should **NOT DISMISS** these claims against defendants Gentry, Plotner and Dougher. The Court should **DISMISS** these claims against all other defendants without prejudice and with leave to amend.

- Access to Clothing and Bedding Claims: The Court should **DISMISS** these claims without prejudice and with leave to amend.

- Mental Health Treatment Claims: The Court should **NOT DISMISS** these claims against defendants Gentry, Plotner and Dougher in their individual capacities. The Court should **DISMISS** these claims against defendants Gentry, Plotner, and Dougher in their official capacities without prejudice and with leave to amend. The Court should **DISMISS** these claims against all other defendants without prejudice and with leave to amend.

- Nutraloaf Claims: The Court should **NOT DISMISS** these claims against defendant Gentry in his individual capacity. The Court should **DISMISS** this claim against defendant Gentry in his official capacity without prejudice and with leave to amend. The Court should **DISMISS** these claims against all other defendants without prejudice and with leave to amend.

- Strip Search and Leg Shackle Claims: The Court should **DISMISS** plaintiff's claims against defendants Tangen, Barnett and Bishop in their individual capacities with prejudice. The Court should **DISMISS** plaintiff's claims against defendants Tangen, Barnett and Bishop in their official capacities without prejudice and with leave to amend. The Court should **NOT DISMISS** these claims against defendants Gentry, Austin, Ashworth, Anderson, Plotner, Schaub and Wolfe.

- Fourteenth Amendment Equal Protection Claims: The Court should **DISMISS** these claims without prejudice and with leave to amend.

- State Law Tort Claims: The Court should **DISMISS** these claims without prejudice and with leave to amend.

## <u>LEAVE TO AMEND</u>

When a pro se litigant's complaint fails to state a claim upon which relief may be granted the Court generally grants the opportunity to amend the complaint. *Lucas v. Dep't of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995). However, the Court may deny leave to amend when amendment would be futile, or the amended complaint would be subject to dismissal. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).

1

2

3

4

5

6

7

8

9

10

11

12

The Court should grant plaintiff leave to amend for all dismissed claims except for 1) plaintiff's Fourth Amendment claims against defendants Tangen, Barnett and Bishop in their individual capacities; 2) plaintiff's Fourteenth Amendment claims against defendants Tangen, Barnett and Bishop in their individual capacities; and 3) Eighth Amendment claims. Plaintiff's Fourth and Fourteenth Amendment claims against defendants Tangen, Barnett and Bishop attempt to allege violations based on the defendants' supervisory and administrative role in the jail. However, as has been discussed in this Report and Recommendation, plaintiff cannot allege a Section 1983 action against defendants in their individual capacities, solely on the basis of their position as a supervisor within the jail. Additionally, as a pretrial detainee, plaintiff cannot state a claim under the Eighth Amendment and must allege condition of confinement claims under the Fourteenth Amendment.

13

## IN FORMA PAUPERIS STATUS ON APPEAL

14

15

16

17

18

The Court must also decide whether plaintiff's *in forma pauperis* status should continue on appeal. *See* 28 U.S.C. §1915(a)(3) ("an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith").  The Court must determine whether appeal is frivolous or malicious, or whether it fails to state a claim on which relief may be granted.  *See* 28 U.S.C. §1915(e)(2)(B)(i)&(ii).

19

20

21

While the Court was not persuaded on the merits of plaintiff's claim, there is no evidence that his appeal is frivolous or is taken in bad faith. Accordingly, the Court recommends that *in forma pauperis* status should continue on appeal.

22

23

24

25

1

CONCLUSION

2      Based on the foregoing discussion, the undersigned recommends that the Court

3  **GRANT IN PART** and **DENY IN PART**, defendants' motion pursuant to this Report and

4  Recommendation.

5      The parties have **fourteen (14) days** from service of this Report and

6  Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6;

7  FRCP 72(b)(2). Failure to file objections will result in a waiver of those objections for

8  purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). If objections are filed, the

9  parties shall have **fourteen (14) days** from the service of the objections to file a

10  response. FRCP 72(b)(2). Accommodating this time limitation, this matter shall be set

11  for consideration on March 20, 2020, as noted in the caption.

12      Dated this 2nd day of March, 2020.

13

14

15

16  Theresa L. Fricke
    United States Magistrate Judge

17

18

19

20

21

22

23

24

25

REPORT AND RECOMMENDATION - 41