UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BRENT LUYSTER,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>RIC BISHOP, et al.,<br><br>　　　　　　　Defendants. | CASE NO. 3:18-cv-06022-DGE<br><br>ORDER DENYING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT |

## I.　INTRODUCTION

This matter comes before the Court on Defendants' Second Motion for Summary Judgment.  (Dkt. No. 69.)  The Court having considered the pleadings filed in support of and opposition to the motion and the remainder of the record hereby DENIES Defendants' motion for the reasons discussed herein.

## II.　BACKGROUND

**A.  Procedural Background**

1    This is a 42 U.S.C. § 1983 prisoner civil rights action.  Pro se Plaintiff Brent Luyster filed
2    a complaint alleging multiple violations of his First, Fourth, Eighth, and Fourteenth Amendment
3    rights during his pretrial incarceration at the Clark County Jail ("CCJ") in Vancouver,
4    Washington. (Dkt. No. 5 at 3.)  Several claims were dismissed on Defendants' Motion to
5    Dismiss (Dkt. No. 32) and Defendants' First Motion for Summary Judgment.  (Dkt. No. 57.)
6    Two claims remain.

7    Plaintiff's first remaining claim asserts Defendants Gentry, Plotner, and Dougher
8    confined him in a feces-covered cell without access to personal hygiene or cleaning supplies
9    between April 10 and April 20, 2017 as a form of punishment (the "Unsanitary Conditions"
10   claim).  (Dkt. No. 5 at 13, 17.)  Plaintiff's second remaining claim asserts that during this time
11   the nutraloaf meals he was given were contaminated because the meals were not served on a tray
12   or with utensils, forcing him to eat with his feces-covered hands (the "Nutraloaf" claim).  (Dkt.
13   No. 56 at 37.)  As to both claims, the Court determined genuine issues of material fact existed.
14   (Dkt. No. 56; *see also* Dkt. No. 57.)

15   Subsequently the Court granted Defendants leave to conduct additional discovery and to
16   extend the dispositive motions deadline.  (Dkt. No. 64.)  It was presumed the focus of the
17   additional discovery, and the basis for filing an additional dispositive motion, would be the issue
18   of whether plaintiff exhausted all administrative remedies related to the two remaining claims.
19   (*Id.*; *see also* Dkt. No. 60.)  On February 4, 2022, Defendants filed their Second Motion for
20   Summary Judgment.  (Dkt. No. 69.)  Plaintiff filed his Response on March 4, 2022.[1]  (Dkt. No.
21   74.)

---

[1] The Court recognizes that Plaintiff's Response to Defendants' Second Motion for Summary Judgment was untimely.  (Dkt. No. 74.)  However, the Court finds that the interests of justice are

### B. The CCJ Grievance System

Inmates at the CCJ are provided with an inmate handbook that informs inmates of the CCJ's disciplinary system and grievance procedure. (Dkt. No. 70 at 3.) The CCJ grievance policy outlines that inmates must first attempt to resolve all grievable issues informally through oral communication with a CCJ employee, and if the issue cannot be resolved informally, a "grievance/appeal form" may be submitted. (Dkt. No. 45–3 at 18.) The policy notes that all guidelines, steps, and timelines must be followed to exhaust administrative remedies. (*Id*.)

Per CCJ's grievance policy, CCJ inmates have up to seven days from the time of the event to submit a "grievance/appeal form." (*Id*.) If the inmate is dissatisfied with the response to their grievance, the inmate then has 48 hours from receiving the CCJ employee's response to file a grievance to the next level. (*Id*.) An inmate may appeal a grievance twice up to the third-level, before a final response is issued by the jail chief. (Dkt. No. 70 at 2–3.) All responses and appeals are written on the original grievance form, unless grievances are consolidated. (*Id*. at 4.) The policy is silent as to the requirements of an inmate to follow-up with or refile a grievance in the event that a grievance is lost or not responded to by CCJ staff.

### C. Plaintiff's Evidence Regarding His Grievances

Plaintiff argues that he fully grieved the issues related to his Unsanitary Conditions and Nutraloaf claims. (Dkt. No. 74 at 7.) Plaintiff alleges that on April 18, 2017, he submitted a grievance to Correctional Officer Bond regarding his Unsanitary Conditions and Nutraloaf claims and that "defendants refused to process[] the grievance." (*Id*. at 7.) In support, Plaintiff has included Attachment C to his Response, which he characterizes as a "true and correct

---

served by considering his Response. *See Taylor v. Fairfield Resorts, Inc./Wyndham*, 2009 WL 5195973, *4 (D. Nev. Dec. 23, 2009) (considering a late filing by a pro se plaintiff as it was within the court's discretion and interests of justice).

duplicate copy" of the grievance he filed. (*Id*. at 26, 33.) Attachment C is an unsigned grievance form dated April 18, 2017.[2] (*Id*. at 33.) In the grievance, Plaintiff complains that he has "been locked in [his] cell and covered in poop. None of the [correction officers] will give me cleaning gear or soap to wash with. Sgt Plotner refused to give me soap. All of the [correction officers] are making me accept my nutraloaf with poop on my hands. I am not allowed to have a plate or a spoon." (*Id*.) This "duplicate copy" of the grievance was not proffered by Plaintiff until Defendants raised the issue of exhaustion in their First Motion for Summary Judgment. (Dkt. No. 51 at 90.)

Plaintiff also proffers a grievance he filed on April 27, 2017 that complained of the grievance system for failing to promptly respond to the grievances he has filed. (Dkt. 74 at 39.)[3] In this grievance, Plaintiff specifically referenced that "[o]n 4–18 I made a complaint to C/O Bond and on 4–23 I made on to Sgt. Gentry. It took 20 days to get a response and the other 2 grievances are missing." (*Id*.) Although he does not explain the contents of the 4–18 grievance, Plaintiff alleges that was the April 18, 2017 grievance containing his complaints regarding his Unsanitary Conditions and Nutraloaf claims. (*Id*. at 7.)

Plaintiff also puts forth a May 10, 2017 letter he wrote to the Superior Court complaining of lack of a response on his grievance forms pertaining to his legal materials and records requests. (*Id*. at 7, 43–46.) On May 11, 2017, Plaintiff submitted another grievance further

---

[2] An inscription that states "Submitted to C/O Bond on 4-18-17" was inadvertently cropped from the top of Attachment C, however Attachment T to Plaintiff's Response to Defendants' First Motion for Summary Judgment has the full image. (Dkt. No. 51 at 90.)

[3] Plaintiff's exhibit only provides the first page of the grievance form, however the entire grievance was previously filed as an exhibit to the Declaration of Joseph Barnett. (Dkt. No. 70–1.)

ORDER DENYING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT - 4

complaining of a lack of response on his grievances, however this did not make any reference to the April 18 grievance. (*Id.* at 41.)

Alternatively, Plaintiff alleges that CCJ administrative remedies were not available to him at the time. Plaintiff argues that he was not allowed to "freely access" the grievance system because he was not allowed to file his paper grievances at certain times. (*Id*. at 6.) Plaintiff points to his Behavior Management Plan from March 30 to April 14, 2017 that states he was only allowed an hour out every 72 hours. (Dkt. No. 71–1 at 2.) Plaintiff also puts forth his Medical Flow Chart where Nurse Jennifer Velasquez made a note on April 16, 2017, that "[she] brought [Plaintiff's unsanitary conditions] to the attention of Sargent Plotner whe stated because of the security risk and behavior, this inmate will only be given hygene supplies during his hour out and that cannot happen until the inmate talks to Sargent Gentry and can come to some kind of agreement." (Dkt. No. 74 at 29.)

### D. Defendants' Evidence Regarding Plaintiff's Grievances

Defendants claim that they have no record of Plaintiff filing any grievances related to his Unsanitary Conditions or Nutraloaf claims, including the April 18, 2017 grievance.[4] (Dkt. Nos. 69 at 10, 70 at 4.) Defendants also argue that they responded to his April 27, 2017 grievance regarding the missing grievances (Dkt. No. 70–4) and the letter to the Superior Court explaining what responses they had made to Plaintiff's numerous grievances. (Dkt. No. 74 at 48–49.) In the letter to the court from Defendant Bishop, Bishop noted that on one instance the CCJ was late

---

[4] Plaintiff did file a grievance related to conditions of his cell on July 5, 2017. (Dkt. No. 45–6.) However, that grievance was related to feces in a cell window screen, not the unsanitary conditions he alleged he grieved on April 18, 2017. CCJ staff denied the grievance at the first level, and Plaintiff did not appeal. (*Id*. at 3.)

in providing a response to one of Plaintiff's grievances, but besides that one instance they had responded to his numerous grievances. (*Id.*).

### III.   STANDARD OF REVIEW

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will

discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990).

## IV. DISCUSSION

### A. Genuine Issues of Material Fact Exist as to Whether Plaintiff Exhausted All Administrative Remedies Related to Plaintiff's Two Remaining Claims; Evidentiary Hearing Required

Having reviewed the facts asserted by Plaintiff and those asserted by Defendant, as detailed in Section II.C and II.D *supra*, the Court concludes there is a genuine issue of material fact as to whether Plaintiff exhausted all administrative remedies related to Plaintiff's remaining claims. In particular, there is a factual dispute as to whether Plaintiff filed a grievance on April 18, 2017 (or thereafter). Defendants, therefore, are not entitled to judgment as a matter of law on the issue of exhaustion and dismissal of the remaining claims is inappropriate.

Furthermore, "[i]f a motion for summary judgment is denied [as to the exhaustion of administrative remedies], disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Albino v. Baca*, 747 F.3d 1162, 1170–71 (9th Cir. 2014).

Accordingly, the Court will schedule an evidentiary hearing to determine the factual questions relevant to exhaustion.

### B. Defendants' Other Arguments Previously Decided

Defendants ask for dismissal of the two remaining claims for failure to state a claim. (Dkt. No. 69 at 13.) They also ask for dismissal based on *Turner v. Safley*, 482 U.S. 78 (1987). (Dkt. 69 at 11.) Lastly, they assert they are entitled to qualified immunity. (Dkt. No. 69 at 17.)

However, all three arguments were previously addressed by the Court (*see* Dkt. No. 29 at 26, 29–30; Dkt. No. 56 at 35–38, 40–42), and Defendants have not offered new evidence or analysis sufficient to convince the Court to change its prior rulings.

## V. CONCLUSION

Accordingly, and having considered Defendants' motion, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Defendants' Second Motion for Summary Judgment is DENIED.

1. An evidentiary hearing on the issue of whether Plaintiff exhausted all administrative remedies as to Plaintiff's remaining claims shall be scheduled.
2. After the entry of this order, the Court will issue an order identifying the evidentiary hearing date and directions regarding submission of exhibits.

Dated this 24th day of March 2022.

David G. Estudillo
United States District Judge