UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BRENT LUYSTER,<br><br>                    Plaintiff,<br>       v.<br><br>RIC BISHOP, et al.,<br><br>                    Defendants. | CASE NO. C18-06022-DGE<br><br>ORDER ON EVIDENTIARY HEARING REGARDING EXHAUSTION OF ADMINISTRATIVE REMEDIES |

This matter comes before the Court following an evidentiary hearing on whether Plaintiff Brent Luyster exhausted his administrative remedies for his two remaining claims in his Amended Complaint.

**I      BACKGROUND**

**A.  Procedural History**

This is a 42 U.S.C. § 1983 prisoner civil rights action brought by pro se Plaintiff Brent Luyster alleging multiple violations of his First, Fourth, Eighth, and Fourteenth Amendment rights during his pretrial incarceration at the Clark County Jail ("CCJ") in Vancouver,

ORDER ON EVIDENTIARY HEARING REGARDING EXHAUSTION OF ADMINISTRATIVE REMEDIES - 1

1  Washington. (Dkt. No. 5 at 3.) The facts of the allegations have been explained in prior orders

2  (*see* Dkt. Nos. 29, 56) and the Court incorporates them by reference.

3        On February 5, 2021, Kitsap County ("Defendants") moved for summary judgment, in

4  part arguing Plaintiff failed to exhaust the administrative remedies for his claims before filing

5  this lawsuit. (Dkt. No. 44.) In response to Defendants' motion, Plaintiff submitted what he

6  characterized as a "duplicate" of a grievance he filed on April 18, 2017 ("April 18 grievance").

7  (Dkt. No. 51 at 21, 90.) In the grievance, Plaintiff complained that he had "been locked in [his]

8  cell and covered in poop. None of the [correction officers] will give me cleaning gear or soap to

9  wash with. Sgt Plotner refused to give me soap. All of the [correction officers] are making me

10 accept my nutraloaf with poop on my hands. I am not allowed to have a plate or a spoon." (*Id*.

11 at 90.) The grievance was unsigned, but an inscription at the top stated that it was "submitted to

12 C/O Bond on 4-18-17." (*Id*.) This "duplicate" of the grievance was not proffered by Plaintiff

13 until Defendants brought up exhaustion in their First Motion for Summary Judgment. (*Id*.)

14 Defendants failed to address the grievance in their reply. (Dkt. No. 56 at 44.)

15       On August 18, 2021, the Honorable Michelle L. Peterson issued a Report and

16 Recommendation ("R&R") which the Court adopted on September 27, 2021. (Dkt. Nos. 56, 57.)

17 The R&R dismissed all but two of Plaintiff's remaining claims. (Dkt. No. 56 at 43–44.) The

18 two remaining claims survived summary judgment because there was a genuine issue of material

19 fact as to whether Plaintiff exhausted his administrative remedies for his Nutraloaf and

20 Unsanitary Conditions claims based on the duplicate copy of the April 18 grievance. (*Id*. at 24.)

21 But the Court also noted that there were outstanding questions about the copy of the grievance

22 submitted by Plaintiff. (*Id*. at 44) ("The grievance indicates it was submitted to C/O Bond on

23

24

April 18, 2017, but there is no additional documentation regarding a response from Defendants or whether this grievance was further appealed.").

Plaintiff alleges in his first remaining claim that Defendants Gentry, Plotner, and Dougher confined him in a feces-covered cell without access to personal hygiene or cleaning supplies between April 10 and April 20, 2017 as a form of punishment ("Unsanitary Conditions" claim). (Dkt. No. 5 at 13, 17.) Plaintiff alleges in his second remaining claim that during this time the nutraloaf meals he was given were contaminated because the meals were not served on a tray or with utensils, forcing him to eat with his feces-covered hands ("Nutraloaf" claim). (Dkt. No. 56 at 37.)

As the issue of exhaustion and the duplicate copy of the April 18 grievance were not fully briefed before the R&R was issued, the Court granted the Parties leave to conduct limited additional discovery on the issue of exhaustion. (Dkt. No. 64.) On February 4, 2022, Defendants moved for summary judgment again. (Dkt. No. 69.)

On March 24, 2022, the Court denied Defendants' Second Motion for Summary Judgment finding that "there is a factual dispute as to whether Plaintiff filed a grievance on April 18, 2017." (Dkt. No. 77 at 7.) In accordance with *Albino v. Baca*, the Court scheduled an evidentiary hearing to determine the factual questions relevant to the exhaustion issue. 747 F.3d 1162, 1170–71 (9th Cir. 2014) ("If a motion for summary judgment is denied [as to the exhaustion of administrative remedies], disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue.").

On May 5, 2022, Plaintiff filed his witness list for the evidentiary hearing containing one defendant and seven non-parties. (Dkt. No. 81 at 1.) As Plaintiff failed to request subpoenas

from the Court, the Court issued an order explaining the process for requesting a subpoena under the Federal Rules of Civil Procedure. (*See generally* Dkt. No. 87.) Plaintiff subsequently revised his witness list to include himself and any witnesses called by Defendants. (Dkt. No. 89 at 1.)

The Court held an evidentiary hearing ("Evidentiary Hearing") on August 4, 2022. Both Parties provided exhibits.[1] (Dkt. Nos. 82, 83.) Plaintiff and Defendant Chief Ric Bishop ("Chief Bishop") were the only two witnesses called by the Parties. The Court ordered the Parties to file written closing statement briefs rather than oral closing statements. (Dkt. Nos. 93, 94.)

**B. Evidentiary Hearing**

1. The Grievance Process at the CCJ

The CCJ provides inmates with a handbook that explains the grievance process in detail and provides inmates with forms to submit their grievances. (Dkt. Nos. 92 at 64–65; *see* Defendants' Ex. 1 at 18.) If an inmate has a grievable issue, they must first try to resolve the issue by talking with a CCJ employee. (Dkt. Nos. 92 at 83–84; Defendants' Ex. 1 at 18.) If that approach fails, inmates may submit a formal grievance in one of two ways: electronically or through the paper grievance system. (Dkt. No. 92 at 66.)

Chief Bishop testified complaints and written grievances are distinct steps in the overall CCJ grievance process. (Dkt. No. 92 at 83:20–25) ("A complaint isn't a grievance. . . . A verbal complaint is what inmates are supposed to do according to the handbook. They were supposed to verbally discuss issues with the CO or officer, corrections deputy or corrections officer before

---

[1] Defendants filed an index of exhibits in Dkt. No. 83. Defendants did not file copies of the actual exhibits, however all of Defendants' exhibits relied on in this Order were filed prior to the Evidentiary Hearing. *See* Defendants' Ex. 1 (Dkt. No. 45-3); Defendants' Ex. 2 (Dkt. No. 45-11); Defendants' Ex. 3 (Dkt. No. 5-1); Defendants' Ex. 6 (Dkt. No. 5-1); Defendants' Ex. 10 (Plaintiff's Ex. E).

they start the grievance process."). Plaintiff testified that the terms "complaint" and "grievance" are used interchangeably. (Dkt. No. 92 at 44.)

The paper grievance system involves requesting a paper grievance form from a deputy in the inmate's living unit. (*Id*.) The inmate would then complete the form and submit it to a CCJ employee, who would sign their initials and date the form. (*Id*. at 85; Defendants' Ex. 1 at 18.) The form is then given to a supervisor who has five business days to respond. (Defendants' Ex. 1 at 18.) The supervisor's response is written on the back of the original grievance form then handed back to the inmate. (Dkt. No. 92 at 85–86; Plaintiff's Ex. J at 3–4.) If the inmate is not satisfied with the decision, they may appeal the decision to the second level, a commander. (Dkt. No. 92 at 67–68.) To appeal a paper grievance, an inmate must write on the back of the grievance form stating a reason why they disagree with the response they received. (Plaintiff's Ex. J at 4; Defendants' Ex. 1 at 18.) After an appeal to the commander, an inmate could again appeal the decision to the third level, Chief Bishop. (Dkt. No. 92 at 67.) After Chief Bishop responded to the grievance, the inmate's administrative remedies would be considered fully exhausted, and the inmate would not receive any further response. (*Id*.) At times, rather than handwrite his response Chief Bishop would attach a typed response to the grievance form. (*Id*. at 73.)

The Handbook is silent for what an inmate should do if the paper grievance they file is lost or goes unanswered. (Defendants' Ex. 1 at 18.) Chief Bishop testified that in that case, inmates ask a CCJ employee about the status of the grievance. (Dkt. No. 92 at 68.) The staff will then ask about the status of the grievance, including looking for it if its misplaced. (*Id*.) If the CCJ can't find it, they will ask the inmate to resubmit the grievance. (*Id*.)

The CCJ also allows inmates to file grievances electronically. (Dkt. No. 92 at 65.) Electronically filed grievances usually create an electronic record of the grievance. (*Id*.) Plaintiff was prohibited from filing grievances electronically because he is alleged to have damaged one of the kiosks used to file electronic grievances. (*Id*. at 65–66; Defendants' Ex. 10 at 2.) Plaintiff denied such allegations. (Dkt. No. 92 at 19–20.) Plaintiff asserts his prohibition from filing electronic grievances was unjustified and otherwise inappropriately inhibited him from using the grievance process. (Plaintiff's Ex. D at 4.)

### 2. Dispute over the April 18, 2017 Grievance

Plaintiff testified he submitted a grievance on April 18, 2017 to Deputy Bond in which he grieved the underlying issues of his Nutraloaf and Unsanitary Conditions claims. (Dkt. No. 92 at 10.) He also testified he made a photocopy of the grievance before submitting it to Deputy Bond. (*Id*.) In support of his testimony, he offered a photocopy of the April 18 grievance he alleges he filed. (Plaintiff's Ex. A.) He also testified that he had the ability to make photocopies while at the CCJ (Dkt. No. 92 at 13) and he has put forth a letter to show that some CCJ employees would make him copies. (Plaintiff's Ex. K.)

Plaintiff also testified he had a history of his grievances going unanswered or missing. (Dkt. No. 92 at 15.) Plaintiff offered two additional grievances from late April and early May 2017, each complaining of his lost or unanswered grievances. (Plaintiff's Exs. B and C.) Chief Bishop testified that he was unaware Plaintiff filed a grievance relating to his Nutraloaf or Unsanitary claims. (Dkt. No. 92 at 84.)

### 3. Evidence Related to the April 18, 2017 Grievance

The only mention of any issues Plaintiff raised on April 18, 2017 is contained in a grievance Plaintiff filed on April 27, 2017. (Plaintiff's Ex. B.) Plaintiff stated in his April 27,

2017 grievance that "I am grieving the grievance system. I filed 3 grievances to the second level on 4-6-17" and "on 4–18 I made a *complaint* to C/O Bond and on 4–23 I made one to Sgt. Gentry." (*Id.*) (emphasis added). He adds that "[i]t took 20 days to get a response and the other 2 grievances are missing." (*Id.*).

Plaintiff appealed two prior grievances on April 18, 2017. (Defendants Exs. 2 and 3.) These two grievances were originally filed by Plaintiff on April 16, 2017, six days after Plaintiff alleges he was forced to eat Nutraloaf in an unsanitary cell without utensils. (*Id.*) In one of the April 16, 2017 grievances, Plaintiff complained of the little quantity of the Nutraloaf, but did not raise concerns that he was forced to eat the nutraloaf in the conditions described in his Nutraloaf and Unsanitary Conditions claims. (Defendants' Ex. 3.) The April 16, 2017 grievances were received by CCJ staff and responded to at all three levels. (Defendants Exs. 2 and 3.)

On May 11, 2017, Plaintiff submitted another grievance complaining of missing grievances. (Plaintiff's Ex. C.) This grievance did not mention the April 18 unanswered grievance, or the Nutraloaf and Unsanitary Conditions claims. (*Id.*)

On May 10, 2017, Plaintiff submitted a letter to Superior Court Judge Lewis ("Judge Lewis Letter") in which Plaintiff made complaints of not receiving a response to many of his grievances.[2] (Plaintiff's Ex. D.) The Judge Lewis Letter detailed approximately seven grievances Plaintiff made between February and May 2017, but the April 18 grievance was not mentioned. (*Id.*) Plaintiff testified he did not raise the April 18 grievance in the letter "because it did not have any direct bearing on my criminal case." (Dkt. No. 92 at 20.) But Plaintiff admitted on cross-examination that he also raised issues in the letter unrelated to his criminal

---

[2] Plaintiff also testified that he mailed a copy of the letter to Chief Bishop (Defendants' Exhibit 8). (Dkt. No. 92 at 48.) The Court refers to both letters as the Judge Lewis Letter.

ORDER ON EVIDENTIARY HEARING REGARDING EXHAUSTION OF ADMINISTRATIVE REMEDIES - 7

case, including "[e]xhausted grievance form pertaining to my special diet.  I submitted a grievance on 4-25 and I have not received a response." (*Id*. at 49.)  As for the April 25, 2017 grievance, the record shows that grievance was appealed to the third level, which Chief Bishop responded to on June 23, 2017.  (Defendants' Ex. 6.)

## II      LEGAL STANDARD

If there is an exhaustion issue in a Prison Litigation Reform Act ("PLRA") case, exhaustion should be resolved before reaching the merits of the case, if feasible.  *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014).  "If there is a genuine dispute about material facts, summary judgment will not be granted." *Id*. at 1169.  "If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Id*. at 1170–71 (internal citations omitted).  In making its assessment, the district court may undertake a "preliminary proceeding," such as an evidentiary hearing.  *Id*. at 1168.

Failure to exhaust is an affirmative defense that the defendant in a PLRA case must plead and prove.  *Id*. at 1171.  The defendant must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id*. at 1172 (internal citation omitted).  If the defendant satisfies that burden, the burden of production shifts to the prisoner such that he must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*.  "[T]he ultimate burden of proof remains with the defendant." *Id*.

Acts by prison officials preventing the exhaustion of administrative remedies may make administrative remedies effectively unavailable.  *See Nunez v. Duncan*, 591 F.3d 1217, 1224–25 (9th Cir. 2010).  The Ninth Circuit has "refuse[d] to interpret the PLRA so narrowly as

to . . . permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances." *Brown v. Valoff,* 422 F.3d 926, 943 n.18 (9th Cir. 2005) (quoting *Lewis v. Washington,* 300 F.3d 829, 831–32 (7th Cir. 2002)).

### III     DISCUSSION

This dispute stems from Defendants' argument at summary judgment that Plaintiff failed to exhaust his administrative remedies. It is Defendants' burden on summary judgment to first establish that there was an administrative remedy available to the plaintiff and that the plaintiff failed to exhaust the available remedy. *Albino*, 747 F.3d at 1172. Once Defendants have carried that burden, it is Plaintiff's burden to establish "that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172.

**A. Plaintiff Had Access to Administrative Remedies Through the CCJ's Paper Grievance System**

At the hearing Plaintiff raised the issue that he was not allowed to use the electronic grievance system. (Dkt. No. 92 at 16–18.) Although he was not allowed to use the electronic grievance system, the many paper grievances he filed during that period support a finding that he had access to the paper grievance system and that he exercised his ability to file paper grievances often. (*See* Plaintiff Exs. B, C, G, H; Defendants Exs. 2–7.) The evidence presented also shows that Defendants would accept, investigate, and respond to Plaintiff's grievances. (*Id.*) Therefore, based on the evidence and testimony presented at the Evidentiary Hearing, the Court finds that Plaintiff had access to administrative remedies through the Jail's grievance process to address his issues related to his Nutraloaf and Unsanitary Conditions claims in April 2017.

**B. Defendants Have Established Plaintiff did not File the April 18, 2017 Grievance and Otherwise Failed to Exhaust his Administrative Remedies**

Chief Bishop testified that he was unaware of any paper grievance form submitted by Plaintiff about his Nutraloaf or Unsanitary claims. (Dkt. No. 92 at 84.)  Outside of Plaintiff's copy of his April 18 grievance he alleges he submitted to Deputy Bond, the only mention of a communication or interaction occurring on April 18 is in a grievance Plaintiff filed on April 27, 2017.  (Plaintiff's Ex. B.)  Plaintiff stated in his April 27, 2017 grievance that "I am grieving the grievance system. I filed 3 grievances to the second level on 4-6-17" and "on 4–18 I made a *complaint* to C/O Bond and on 4–23 I made one to Sgt. Gentry." (*Id.*) (emphasis added).  He adds that "[i]t took 20 days to get a response and the other 2 grievances are missing" (*id.*), showing that Plaintiff believed there were only three grievances missing, presumably the aforementioned April 6, 2017 grievances.

The distinction between a complaint and a written grievance is important because the handbook says that the first step in the grievance procedure is to attempt to resolve issues through informal oral communication with an employee. (Defendants' Ex. 1 at 18.)  The handbook further identifies that if the issue remains unresolved, then inmates should complete and submit a written grievance.  (*Id.*)  As described by Chief Bishop's testimony, verbal complaints and written grievances are distinct steps in the overall CCJ grievance process.  (Dkt. No. 92 at 83) ("A complaint isn't a grievance. . . . A verbal complaint is what inmates are supposed to do according to the handbook.  They were supposed to verbally discuss issues with the CO or officer, corrections deputy or corrections officer before they start the grievance process.")

Plaintiff testified that the terms "complaint" and "grievance" are used interchangeably. (Dkt. No. 92 at 44.)  Nevertheless, in his April 27, 2017 grievance he appeared to recognize the

distinction because he uses the term grievance to describe his three written grievance forms and then uses the term complaint for both the April 18 and April 23 issues. (Plaintiff's Ex. B.) If both the April 18 and April 23rd complaints made by Plaintiff were in fact paper grievances, there is nothing in the record mentioning that these two paper grievances were missing.

There is no other mention of the April 18 grievance filed by Plaintiff or his Nutraloaf and Unsanitary conditions claims, including two other grievances he appealed on April 18, 2017. (Defendants Exs. 2 and 3.) These two grievances were originally filed by Plaintiff on April 16, 2017, six days after Plaintiff alleges his was forced to eat Nutraloaf in an unsanitary cell without utensils. (*Id*.) Moreover, in one of the April 16, 2017 grievances, Plaintiff complained of the little quantity of the Nutraloaf, but did not raise concerns that he was forced to eat the nutraloaf in the conditions described in his Nutraloaf and Unsanitary Conditions claims. (Defendants' Ex. 3.) In any event, both of those grievances were received by CCJ staff and responded to at all three levels. (Defendants Exs. 2 and 3.)

On May 11, 2017, Plaintiff submitted another grievance complaining of missing grievances. (Plaintiff's Ex. C.) This too failed to mention the April 18 grievance, or the Nutraloaf and Unsanitary Conditions claims. (*Id*.)

Plaintiff also put forth a May 10, 2017 letter to Superior Court Judge Lewis ("Judge Lewis Letter") in which Plaintiff made complaints of not receiving a response to many of his grievances. (Plaintiff's Ex. D.) Despite the Judge Lewis Letter detailing approximately seven grievances that Plaintiff made between February and May 2017, the April 18 grievance was not mentioned. (*Id*.) Plaintiff testified that he did not bring up the April 18 grievance in the letter "because it did not have any direct bearing on my criminal case." (Dkt. No. 92 at 20:9–11.) But Plaintiff admitted on cross-examination that he also raised issues in the letter unrelated to his

ORDER ON EVIDENTIARY HEARING REGARDING EXHAUSTION OF ADMINISTRATIVE REMEDIES - 11

criminal case, including "[e]xhausted grievance form pertaining to my special diet. I submitted a grievance on 4-25 and I have not received a response." (*Id.* at 49; Plaintiff's Ex. D.) Plaintiff received a response to this April 25, 2017 grievance, even if late according to the procedures in the handbook, on May 12, 2017. (Defendants' Ex. 6.) He then appealed it again to the third level, which Chief Bishop responded to on June 23, 2017. (*Id.*)

From the evidence and testimony put forth by all parties at the Evidentiary Hearing, the Court finds Defendants have established that Plaintiff failed to submit a written grievance on April 18, 2017, or any other day, grieving his Nutraloaf and Unsanitary Conditions claims. Thus, the Court finds that Plaintiff did not exhaust his administrative remedies related to his Nutraloaf and Unsanitary Conditions claims.

### C. Plaintiff Fails to Establish that Administrative Remedies Were Effectively Unavailable

Nothing in the record supports a finding that administrative remedies were effectively unavailable to Plaintiff. As discussed above, although Plaintiff was not allowed to use the electronic grievance system, he often utilized the paper grievance system to grieve his issues. And the evidence presented at the Evidentiary Hearing supports a finding that Plaintiff was using the paper grievance system at this time to fully exhaust his administrative remedies related to other issues he had while at the CCJ. Although Plaintiff testified that his paper grievances would often go missing or unanswered (Dkt. No. 92 at 15), as discussed above, there is no evidence after April 18, 2017 that a paper grievance form submitted on April 18, 2017 was missing or unanswered. Furthermore, Defendants have provided evidence that despite Plaintiff's complaints about the grievance system, Defendants were responding to his grievances.

The Court finds Plaintiff fails to establish that the administrative remedies were effectively unavailable to him in April 2017. Thus, Plaintiff failed to exhaust his administrative remedies available for his Nutraloaf and Unsanitary Conditions claims.

## IV    CONCLUSION

The only remaining claims in this case relate to Plaintiff's alleged April 18, 2017 grievance. Because the Court finds that Plaintiff failed to exhaust his administrative remedies for those claims, JUDGMENT is entered in favor of Defendants and this case is closed. IT IS SO ORDERED.

Dated this 24th day of October 2022.

David G. Estudillo
United States District Judge